**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IMANI CURTIS,**<br>**PLAINTIFF**<br>**v.**<br>**EQUIFAX INFORMATION SERVICES LLC,**<br>**DEFENDANT** | **CIVIL ACTION**<br><br>**No. 2:26-cv-07982** |

**FIRST AMENDED COMPLAINT**

COMES NOW, Plaintiff Imani Curtis ("Plaintiff"), by and through undersigned counsel, hereby brings this civil action against Defendant Equifax Information Services LLC ("Defendant"), and in support thereof states the following:

**PRELIMINARY STATEMENT**

1. Plaintiff seeks damages, attorney fees and costs, for claims brought by Plaintiff against Defendant for violations of the Fair Credit Reporting Act ("FCRA"), including violations that impaired Plaintiff's statutory right to privacy in, and the confidentiality of, Plaintiff's personal financial information.

**JURISDICTION AND VENUE**

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because the claims arise under the Fair Credit Reporting Act.

3. Defendant is subject to the provisions of the FCRA and to the personal jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and the Pennsylvania jurisdictional provisions set forth below.

4. Defendant is registered and qualified to do business in Pennsylvania as a foreign legal entity. By obtaining and maintaining that qualification, Defendant is subject to general personal jurisdiction in Pennsylvania pursuant to 42 Pa.C.S. § 5301(a)(2)(i) or (a)(3)(i), as applicable to Defendant's organizational form, and § 5301(b), including with respect to claims arising inside or outside of Pennsylvania. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023).

5. Venue is proper in this Court under 28 U.S.C. § 1441(a) because this District embraces the place where the state action was pending.

6. Plaintiff commenced this action in the Philadelphia Municipal Court, Civil Division, at No. SC-26-09-16-4741. Defendant removed the action to this Court on October 16, 2026. This First Amended Complaint sets forth Plaintiff's claims in the removed action and preserves Plaintiff's objections and reserved rights concerning removal.

**FEDERAL RELIEF AND RESERVED RIGHTS**

7. Plaintiff brings this action as an individual civil action under the FCRA and seeks the full relief authorized by 15 U.S.C. §§ 1681n and 1681o.

8. The monetary limitation in the state pleading applied while the action remained pending before the Philadelphia Municipal Court. Following Defendant's removal, Plaintiff seeks all claims and remedies available under applicable law without limitation based on that court's monetary jurisdiction.

9. Plaintiff expressly reserves all objections and defenses concerning removal, subject-matter jurisdiction, the amount in controversy, contractual waiver of removal, forum selection, arbitration, delegation, enforceability, unconscionability, waiver, default, estoppel, and

the applicability, formation, authenticity, completeness, and operative version of any purported agreement on which Defendant may rely.

**PARTIES**

10. Plaintiff is a natural person residing in Philadelphia, Pennsylvania.

11. Plaintiff is a "consumer" as defined under 15 U.S.C. § 1681a(c) of the FCRA.

12. Defendant is a "consumer reporting agency" ("CRA") that compiles and maintains credit reporting files on consumers nationwide, as defined under 15 U.S.C. § 1681a(f) of the FCRA, and is a nationwide CRA within the meaning of 15 U.S.C. § 1681a(p). Defendant is regularly engaged in the business of compiling and maintaining files on consumers for the purpose of furnishing consumer reports to third parties regarding a consumer's creditworthiness, credit standing, or credit capacity.

**HISTORICAL BACKGROUND;**
**STATUTORY PRIVACY AND ANTI-DISCRIMINATION**
**SAFEGUARDS OF THE FCRA**

13. In 1970, Congress enacted the Fair Credit Reporting Act to address the significant problems created by inaccurate, incomplete, and outdated information in the consumer reporting system. In doing so, Congress sought "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). Congress specifically recognized the importance of requiring consumer reporting agencies ("CRAs") to maintain and disclose accurate information so that consumers can understand what information is being maintained and reported about them and take appropriate action when that information is inaccurate, incomplete, or obsolete. In particular, Congress expressly recognized the consumer's

"right to privacy," 15 U.S.C. § 1681(a)(4), and required reasonable procedures that account for the "confidentiality" and "proper utilization" of consumer information, id. § 1681(b).

14. The Third Circuit has recognized that, in enacting the FCRA, Congress sought to address the problem of "inaccurate or arbitrary information" in consumer reports by requiring CRAs to "utilize accurate, relevant, and current information in a confidential and responsible manner." *See Kelly v. RealPage, Inc.*, 47 F.4th 202 (3d Cir. 2022) (discussing *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010)) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). Congress therefore did not merely seek to regulate the information ultimately disseminated to third parties; it established substantive rights designed to ensure that consumers themselves have meaningful access to the information maintained in their credit files.

15. The informational-privacy interest recognized in constitutional jurisprudence supplies important context for Congress's express protection of the consumer's "right to privacy." 15 U.S.C. § 1681(a)(4). Plaintiff invokes the FCRA's statutory safeguards for that interest.

16. In his dissent in *Olmstead v. United States*, Justice Brandeis described the "right to be let alone" as "the most comprehensive of rights, and the right most valued by civilized men." 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting).

17. In *Whalen v. Roe*, the Supreme Court identified "the individual interest in avoiding disclosure of personal matters" as a distinct privacy interest. 429 U.S. 589, 599–600 (1977). The Court also recognized the threat to privacy from accumulating extensive personal information in computerized government files, while upholding the challenged system with its safeguards. *Id.* at 605–06. The omissions alleged here impair Plaintiff's ability to identify the private financial

obligations associated with Plaintiff's identity, linking the requested file disclosure to the protection of personal information.

18. In *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 115 (3d Cir. 1987), the Third Circuit recognized privacy protection for nonpublic financial information, including debts and income, and cited the FCRA as supporting a reasonable expectation of confidentiality. Plaintiff invokes the FCRA's statutory safeguards for these protected privacy interests. The principal purpose of this Complaint is to enforce Plaintiff's right to privacy and the confidentiality of Plaintiff's personal financial information through the specific right to complete file disclosure. Plaintiff seeks enforcement of statutory protections for the civil-rights interest in the confidentiality of personal financial affairs, not merely correction of a creditworthiness assessment.

19. Congress also connected consumer-reporting safeguards to equal employment opportunity: a CRA may furnish a report for employment purposes only upon the user's certification that its information will not be used in violation of applicable federal or state equal-employment-opportunity law. 15 U.S.C. § 1681b(b)(1)(A)(ii). The FCRA separately bars employment-related investigative inquiries that would violate those laws. Id. § 1681d(d)(2). Section 1681g's file-access rights complement these protections by enabling consumers to identify the personal information attributed to them and the recipients of their reports, including employment recipients. Id. § 1681g(a)(1)–(3). Withholding identifying account information can obstruct a consumer's ability to determine what financial history is attributed to the consumer and to investigate whether it was used unlawfully, including discriminatorily. These related safeguards inform the purpose of the disclosure claim pleaded here.

20. That purpose is particularly evident in § 1681g, which requires CRAs, upon request, to clearly and accurately disclose to consumers "all information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a). Congress's decision to require disclosure of all information in a consumer's file serves an important function: it allows the consumer to determine what information a CRA possesses, evaluate whether that information is accurate and complete, identify potentially obsolete or unlawfully reported information, exercise the consumer's statutory right to dispute inaccurate information, and invoke the statutory safeguards for the confidentiality and lawful use of the consumer's personal information.

21. Section 1681g's disclosure scheme also enables consumers to learn who has obtained their reports and what inquiries have been made concerning them. It requires identification of report recipients within the applicable statutory periods, and a record of specified inquiries concerning credit or insurance transactions not initiated by the consumer. 15 U.S.C. § 1681g(a)(3), (5). These complementary provisions show the privacy function of access to file information: enabling the consumer to monitor how personal information is used and to invoke the FCRA's safeguards against improper disclosure.

22. In *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099–1100 (9th Cir. 2022), the Ninth Circuit recognized that alleged omissions from § 1681g disclosures could concretely impair both privacy and informational interests, including consumers' ability to monitor disclosure of their personal information to third parties. A disclosure claim thus may protect privacy as well as accuracy; the information withheld and resulting harm matter. *Cf. Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 347 (4th Cir. 2017) (finding no concrete injury where the omission caused no real adverse effect).

23. The Supreme Court has likewise recognized that the denial of information required by statute to be disclosed may constitute a concrete informational injury where the withheld information bears a direct relationship to the interests the disclosure requirement was designed to protect. *See Federal Election Commission v. Akins*, 524 U.S. 11, 21 (1998). The FCRA's requirement that CRAs disclose information maintained in a consumer's file serves that same purpose by ensuring that consumers have access to information necessary to understand, evaluate, and address the contents of their files. *See Kelly v. RealPage Inc.,* 47 F.4th 202 (3d Cir. 2022)*; Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010)*; Goode v. LexisNexis Risk & Information Analytics Group, Inc*., 848 F. Supp. 2d 532 (E.D. Pa. 2012)*; Gillespie v. Equifax Information Services, LLC,* 484 F.3d 938 (7th Cir. 2007).

24. Thus, Congress's requirement that CRAs disclose "all information in the consumer's file" is not an empty procedural formality. It is a substantive consumer protection designed to provide consumers with the information necessary to understand, monitor, and challenge the accuracy and lawful use of the personal financial information maintained about them. Withholding information maintained in a consumer's file frustrates the very purpose Congress sought to accomplish through the FCRA's disclosure requirements. *See Kelly v. RealPage Inc.*, 47 F.4th 202 (3d Cir. 2022); *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010); *Goode v. LexisNexis Risk & Information Analytics Group, Inc.*, 848 F. Supp. 2d 532 (E.D. Pa. 2012); *Gillespie v. Equifax Information Services, LLC*, 484 F.3d 938 (7th Cir. 2007); *Tailford v. Experian Information Solutions, Inc.*, 26 F.4th 1092 (9th Cir. 2022).

25. Finally, Congress reinforced the importance of these rights by creating private causes of action for negligent and willful violations of the FCRA and authorizing statutory damages and attorney's fees. See 15 U.S.C. §§ 1681n, 1681o; *Long v. Se. Pa. Transp. Auth.*, 903

F.3d 312, 323 (3d Cir. 2018) ("Congress granted the consumer a right to receive a copy of his report before adverse action is taken, and provided for statutory damages plus attorney's fees for willful noncompliance[.]"). These remedies demonstrate that Congress intended consumers to have an enforceable right to obtain the information the FCRA requires CRAs to disclose and to hold CRAs accountable when they fail to provide that information.

26. The connection between disclosure, privacy, and fair use is also reflected in *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 319, 323–24 (3d Cir. 2018). Addressing § 1681b(b)(3)'s employment-reporting protections, the Third Circuit explained that disclosure enables a consumer to advocate for fair use of even accurate information and analogized the inability to see or respond to a report to interference with control over personal information. Plaintiff invokes those related privacy and fair-use interests through the file-disclosure right asserted here. Congress made the FCRA's protections privately enforceable through remedies for negligent and willful noncompliance, including attorney's fees and, for willful violations, statutory damages. *See* 15 U.S.C. §§ 1681n, 1681o.

## FACTUAL ALLEGATIONS

### ***<u>Plaintiff's Consumer Disclosure</u>***

27. On or about August 1, 2026, Plaintiff requested a copy of Plaintiff's consumer credit disclosure from Defendant.

28. On or about August 1, 2026, Plaintiff requested a copy of Plaintiff's consumer credit disclosure from Defendant. Defendant responded by providing an electronic copy of the Disclosure identified below.

29. Plaintiff sought to understand the information maintained about Plaintiff and to compare the disclosed account information with Plaintiff's own records.

30. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request, Defendant was required to "clearly and accurately" disclose ***all information*** it had in Plaintiff's file at the time of the request, following the identity verification required by 15 U.S.C. § 1681h(a)(1).

31. Defendant provided an electronic copy of Plaintiff's Consumer Disclosure ("Defendant's Disclosure") to Plaintiff, relevant parts of which are attached as Exhibit A.

32. Despite a federally mandated requirement to disclose ***all*** information in Plaintiff's credit file at the time of Plaintiff's request, Defendant's Disclosure omitted a significant volume of information contained in Defendant's records related to Plaintiff's credit file.

33. Defendant's Disclosure included, *inter alia*, information regarding accounts classified as "*Charge Off*", "*Collection*", and/or other potentially negative accounts reported by the following entities (the "data furnishers"):

a. CAPITAL ONE AUTO FINANCE - *1001

b. Lead Bank - *0957

c. CAPITAL ONE AUTO FINANCE - *1001

d. Lead Bank - *6621

e. HARRIS & HARRIS, LTD - *7405

34. The following account-specific examples identify the information Defendant omitted or presented incompletely or inaccurately, and the corresponding pages of Defendant's Disclosure:

35. For example, on original Disclosure page 10, HARRIS & HARRIS, LTD is identified only by the account identifier "*7405", while the entry separately displays a balance of $103, the original creditor "COMCAST CABLE". The challenged identifier does not reveal the

characters replaced by the asterisk; Plaintiff does not allege that the other fields actually displayed on that page are missing.

***Defendant's Disclosure Was Not Complete, Clear, or Accurate***

**Duplicate and Indistinguishable Account Names and Numbers**

36. Defendant's Disclosure reflects multiple account entries reported under the same or materially identical creditor/furnisher name and bearing the same masked account-number string (the "Indistinguishable Accounts"). See Exhibit A.

a. CAPITAL ONE AUTO FINANCE - *1001: original page 7, opened 05/24/2021, balance $27,416, status "Charge Off"; original page 9, opened 02/17/2016, balance $0, status "Pays As Agreed".

37. Because Defendant replaced the account-number digits that would distinguish the entries with asterisks (*), Plaintiff cannot easily determine from Defendant's Disclosure whether the Indistinguishable Accounts represent separate accounts or duplicate reporting of the same underlying account.

38. To the extent the Indistinguishable Accounts reflect different underlying accounts, Defendant possessed or had access to the full, distinct account numbers needed to identify each account separately, but withheld those numbers from Plaintiff.

39. The masking therefore prevents Plaintiff from matching each entry to Plaintiff's records and/or performing a simple investigation of *that specific account*, determining which account is being reported, such as for the purpose of identifying a possible identity-theft or mixed-file issue, or submitting a meaningful dispute as to a particular account.

40. Alternatively or additionally, to the extent discovery establishes that two or more Indistinguishable Accounts represent the same underlying account, then, in addition to the

improper masking of *different* Indistinguishable Accounts, Defendant has also reported *the same* Indistinguishable Account more than once in Plaintiff's file and/or consumer report, but made it impossible for Plaintiff to easily discover this violation.

41. Duplicate reporting of the same account can falsely suggest that Plaintiff has multiple separate obligations to the same creditor, derogatory accounts, collections, charge-offs, delinquencies, balances, or payment histories when in fact, only one underlying account exists.

42. Defendant's Disclosure provides Plaintiff no meaningful means to distinguish between those materially different possibilities. The ambiguity is itself consequential: Plaintiff cannot determine whether Defendant has masked distinct accounts, duplicated one account, or both. Defendant's failure to disclose the full account numbers and other distinguishing account information therefore prevents Plaintiff from evaluating the completeness and accuracy of the information in Plaintiff's file and from effectively disputing a particular entry.

43. Defendant maintains, receives, and/or uses sufficient account-level information, including the full account number and related account identifiers, to determine whether each Indistinguishable Account relates to a separate account or a duplicate reporting of the same account.

44. Defendant's presentation of accounts in an indistinguishable form to Plaintiff is neither clear nor accurate and impairs Plaintiff's ability to investigate, verify, and dispute the entries.

45. Indeed, reporting different accounts in identical fashion, or reporting the same account more than once but making it impossible for the consumer to easily identify this, is diametrically opposite to the "clearly and accurately" standard that the FCRA requires under 15 U.S.C. § 1681g(a)(1).

46. The 2022 Credit Reporting Resource Guide instructs furnishers to report a complete and unique consumer account number and states that each submission should contain only one occurrence of each account number. Its FAQ 21 explains that changes in account identifiers may cause duplicate tradelines unless the consumer reporting agencies are notified. See Exhibit C, printed pages 3-3, 4-5 and 6-14. These industry instructions confirm the role of complete and unique identifiers in distinguishing accounts, tracing information to its source, and preventing duplicate tradelines.

**Missing Account Numbers, Account Information and Payment History**

47. Making matters even more confusing for Plaintiff, Defendant omitted the full account numbers, account information, and payment history relating to the data furnisher(s)' account(s). See Exhibit A**.**

48. Full account numbers, account information, and payment history are essential because they enable consumers to identify and dispute potential inaccuracies in their credit files and to prevent inaccurate information from being reported or furnished to third parties. *See Selvam v. Experian Information Solutions, Inc.*, 651 F. App'x 29, 33 (2d Cir. 2016) (explaining that the purpose of § 1681g is to enable consumers to obtain information necessary to dispute potential inaccuracies in their files so that inaccurate information is not sent to third parties).

49. By omitting full account numbers, account information, and payment history, Defendant deprived Plaintiff of information necessary to determine whether the data furnisher(s)' account(s) belonged to Plaintiff, whether they were being reported more than once, or whether they resulted from identity theft, a mixed file, or another reporting error. Even worse, Plaintiff was hindered in Plaintiff's ability to effectively dispute the information pursuant to 15 U.S.C. § 1681i because the information in Defendant's Disclosure was not complete.

50. The furnishing of inaccurate account information could adversely affect how Plaintiff is perceived by third parties who rely upon consumer reports in evaluating an individual's creditworthiness, financial responsibility, and eligibility for credit or other financial services.

51. Upon information and belief, the data furnisher(s) ***did*** report full account numbers, account information, and payment history belonging to the respective accounts to Defendant, and this information ***was*** contained within Defendant's file regarding Plaintiff at the time of Plaintiff's request.

52. When Defendant produces and sells reports regarding Plaintiff to third parties, full account numbers, account information, and payment history are included in those reports – unlike in the Defendant's Disclosure it provided to Plaintiff.

53. Defendant cannot justify withholding Plaintiff's full account numbers as a privacy or security measure. In fact, it has the opposite effect of impairing Plaintiff's right to privacy and Plaintiff's ability to protect such privacy. Plaintiff's request for complete disclosure seeks to protect Plaintiff's privacy by allowing Plaintiff to identify and review the personal financial information maintained and reported about Plaintiff.

54. Plaintiff obtained Defendant's Disclosure through annualcreditreport.com only after, **first**, completing annualcreditreport.com's robust identity-verification process and then, after successfully completing that process and having been securely handed off by annualcreditreport.com's website to Defendant's own, secure website through an already pre-authorized and pre-authenticated link, **then** additionally completing Defendant's own, separate and also extremely robust identity-verification process.

55. Only after completing both verification processes was Plaintiff permitted to obtain Defendant's Disclosure. Defendant therefore had authenticated Plaintiff as the consumer whose

file was being disclosed, consistent with 15 U.S.C. § 1681h(a)(1), before delivering Defendant's Disclosure directly to Plaintiff.

56. Defendant's Disclosure was furnished directly to the authenticated consumer – Plaintiff – concerning the authenticated consumer's – Plaintiff's – own consumer file. Defendant's Disclosure nevertheless contained extensive sensitive personal and financial information concerning Plaintiff.

57. In light of the completed identity-verification procedures, the direct delivery to the authenticated consumer, and Defendant's disclosure of other sensitive file information, withholding distinguishing account information impairs Plaintiff's ability to exercise the FCRA's privacy safeguards concerning Plaintiff's own financial information. Providing complete file information directly to the authenticated consumer is consistent with protecting that information against improper third-party access or use.

58. Defendant's omissions impair Plaintiff's ability to determine which private financial obligations Defendant has associated with Plaintiff's identity and to identify whether each particular account entry reflects an account belonging to Plaintiff, identity theft, or a mixed-file error. That impairment affects Plaintiff's ability to exercise the FCRA's safeguards for the informational-privacy interest in confidential financial affairs recognized in *Fraternal Order of Police*, 812 F.2d at 115.

59. Defendant's masking of the account numbers is particularly unjustified because, upon information and belief, Defendant furnishes full account numbers to third parties that purchase or otherwise obtain Plaintiff's consumer report. Defendant therefore has the capability to disclose the full numbers and has chosen to withhold them only from the authenticated consumer seeking to review Plaintiff's own file.

60. Defendant continued to conceal portions of Plaintiff's account numbers from the authenticated consumer whose file was being disclosed. Although 15 U.S.C. § 1681g(a)(1) expressly addresses the truncation of Social Security numbers under specified circumstances, it contains no comparable provision expressly authorizing Defendant to truncate account numbers in a disclosure provided directly to a properly authenticated consumer.

61. Upon information in belief, the detailed information Defendant provides in reports to third parties demonstrates its ability to comply with 15 U.S.C. § 1681g(a) as well as to provide the full contents of its files.

62. Having a duty to disclose ***all of the information*** regarding the accounts in Plaintiff's file, Defendant breached its duty by failing to provide full account numbers, account information, and payment history, as such information is necessary for a consumer to be able to research and evaluate the information contained in Plaintiff's credit file.

63. Absent such information, a consumer is reduced to, at best, playing detective and, at worst, guessing as to whether the information in their report is accurate.

64. **In other words, it is not *Plaintiff's* job to search for federally mandated information that is missing from Defendant's Disclosure. Rather, it was *Defendant's* job to provide a *complete* disclosure so Plaintiff had *all* information possessed by Defendant.**

65. In addition to the missing account numbers from the data furnisher(s)' account(s) identified in this First Amended Complaint, Defendant's Disclosure included multiple other accounts reported by other data furnishers without full account numbers.

66. Upon information and belief, specifically, despite having this information in its files, Defendant disclosed multiple additional accounts without full account numbers.

67. Upon information and belief, all relevant data furnishers actually reported full account numbers to Defendant, and this information was contained within Defendant's file on Plaintiff at the time of Plaintiff's request for the consumer disclosure.

68. Due to widespread systemic problems, Defendant's automated systems omit identifying digits or portions of account numbers, account information, and payment history.

69. Defendant knows of this error but, despite such knowledge, has failed and refused to correct it.

70. The failure to disclose full account numbers, account information, and payment history violates the FCRA's requirement that Defendant disclose **all** information contained in a consumer's credit file clearly and accurately. *See Washington v. Equifax,* Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) ("The plain language of the FCRA requires that the consumer reporting agency shall clearly and accurately disclose to the consumer '[a]ll information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.").

***Plaintiff's Particularized Injury, Causation, and Article III Standing***

71. Plaintiff has suffered a concrete, particularized injury-in-fact sufficient to satisfy Article III. The Fair Credit Reporting Act creates a substantive right in consumers to receive a clear and accurate disclosure of all information in their file, 15 U.S.C. § 1681g(a), and the Supreme Court has recognized that the denial of information to which a consumer is statutorily entitled, coupled with downstream real-world consequences, constitutes a concrete harm for standing purposes. *See TransUnion, LLC v. Ramirez*, 594 U.S. 413, 442–43 (2021) (informational injuries are cognizable where the plaintiff identifies "***downstream consequences***" from failing to receive

the required information); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113–14 (9th Cir. 2017) (on remand, examining the concrete interests protected against inaccurate credit-related information); *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 323–25 (3d Cir. 2018) (failure to provide an FCRA-mandated disclosure of information in the consumer's file before adverse action is a concrete informational injury). Here, Defendant's omission of the full account numbers, account information, and payment history deprived Plaintiff of the very information Congress required Defendant to provide (and Plaintiff to receive), and therefore produced the downstream harms particularized herein.

72. Plaintiff's informational injury satisfies the Third Circuit's three-part framework because: (a) Defendant omitted information to which Plaintiff was substantively entitled under § 1681g(a); (b) the omissions adversely affected Plaintiff's ability to understand, verify, dispute, and correct the information maintained about Plaintiff; and (c) those adverse effects bear a direct nexus to Congress's interests in the protection of consumer privacy, meaningful consumer access to credit-file information, and fair and accurate reporting. Kelly, 47 F.4th at 202, 213–14.

73. The lack of full account numbers, account information, and payment history, in addition to all the other harms described herein, has caused Plaintiff great frustration and emotional distress when trying to understand Plaintiff's credit report and verify it against Plaintiff's own records.

74. Because Defendant did not provide clear and complete account-identifying information, Plaintiff was frustrated in attempting to understand the improperly disclosed accounts, compare them with Plaintiff's own records, and determine the accuracy of the reporting, for the purposes of, inter alia, assessing whether to dispute this information - frustrating the very purposes of FCRA's existence. The inability to fully assess the completeness and accuracy of the

disclosed account information caused Plaintiff frustration and emotional distress. Plaintiff attributes those consequences to the informational omissions alleged here.

75. Plaintiff requested Defendant's Disclosure to evaluate the information actually maintained about Plaintiff, match the reported entries to Plaintiff's records, and exercise the FCRA's rights to investigate and dispute incomplete, inaccurate, obsolete, or improperly attributed information. Defendant's omissions obstructed those actual efforts at the account level and caused the resulting adverse effects described above.

76. The defects identified herein also destroyed Plaintiff's confidence in the reliability of the remaining information in Defendant's Disclosure. Plaintiff cannot determine which entries accurately reflect Plaintiff's obligations and payment history when the same disclosure conceals the information needed to test those entries against Plaintiff's own records.

77. The practical consequence for Plaintiff is captured by the maxim *falsus in uno, falsus in omnibus*: once Defendant's Disclosure is demonstrably incomplete or inaccurate in ***some*** material respects, Plaintiff cannot confidently rely on ***anything else*** in the rest of it without independently verifying that information. This flies in the face of the entire overarching purpose of the FCRA. In a nutshell, by failing to comply with some of FCRA requirements which Plaintiff can plainly see for some of the accounts, Defendant is effectively forcing Plaintiff to question every other account and each related balance, payment history, status, and date, because the same reporting and disclosure systems produced both the identified defects and the remaining information.

78. The Indistinguishable Accounts exemplify that injury with particular clarity. Plaintiff cannot reliably assign a balance, payment history, delinquency, or status to a particular obligation when Defendant presents separate entries under indistinguishable names and numbers.

The uncertainty extends to the substantive information attached to those entries and impairs Plaintiff's ability to determine what is correct and what requires challenge.

79. Plaintiff's loss of confidence is accompanied by the actual obstruction of review, verification, and correction, and the particular downstream consequences identified above. Defendant's withholding of distinguishing information prevents Plaintiff from identifying the extent of the defects through the very file-access procedure Congress provided for that purpose.

80. Under the Third Circuit's informational-injury framework, the omitted information, the adverse effects caused by its omission, and the concrete interests protected by the disclosure requirement are connected here: Defendant withheld the account-level information Plaintiff needed for the actual review and use described above, thereby obstructing Plaintiff's efforts to protect the accuracy, confidentiality, and lawful use of Plaintiff's personal financial information. See Kelly v. RealPage Inc., 47 F.4th 202, 213–14 (3d Cir. 2022).

81. These injuries are particular to Plaintiff's own file, Defendant's response to Plaintiff's request, and Plaintiff's actual experience attempting to use Defendant's Disclosure. They are fairly traceable to Defendant's omission and presentation of the identified information because those practices deprived Plaintiff of the means to identify and evaluate the affected accounts.

82. The damages requested under 15 U.S.C. §§ 1681n and 1681o compensate the concrete injuries caused by Defendant's conduct and therefore redress those injuries through a judgment in Plaintiff's favor.

83. Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security)

numbers does not technically comply with Section 609 because it does not provide ‘accurate’ (and perhaps not ‘clear’) disclosure of ‘all information’ in the file.” See Exhibit B.

84. In English v. Trans Union LLC, No. 1:25-cv-00574 (S.D. Ohio Aug. 11, 2026), the court denied judgment on the pleadings on a § 1681g claim alleging that Trans Union possessed complete account numbers but supplied truncated numbers that prevented the consumer from determining which accounts belonged to her and whether the reported information was accurate. The court allowed the disclosure claim and both negligence-based and willfulness-based damages theories to proceed. Its reasoning directly supports requiring a response to the detailed account-identifier, automated-omission, and resulting-injury allegations presented here.

85. Defendant’s omission of full account numbers, account information, and payment history greatly decreases Plaintiff’s ability to understand Plaintiff’s consumer credit disclosure, identify the accounts, and compare those accounts with Plaintiff’s own records.

86. Plaintiff relied upon Defendant’s Disclosure to be complete, accurate, and presented in a manner that would allow Plaintiff to understand and evaluate the information contained within Plaintiff’s consumer file. Instead, Defendant’s Disclosure was confusing and incomplete, hindering Plaintiff’s ability to understand, evaluate, and verify the information contained therein.

87. Defendant’s omissions interfered with Plaintiff’s actual efforts to access, assess, and use Plaintiff’s credit information, impairing the exercise of federally protected rights and causing the practical consequences described herein. The resulting injury implicates Plaintiff’s privacy, control over personal financial information, and ability to ensure fair and accurate reporting. *See Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1102 (9th Cir. 2022) (“...the § 1681g claim at issue in this case is distinguishable from the disclosure claims that the TransUnion

Court found lacked standing because the plaintiffs here have alleged a sufficiently concrete injury – they alleged that without complete information in their § 1681g disclosures, they are unable to adequately opt out of certain disclosures to other parties and ensure fair and accurate reporting of their credit information…").

***Prevalence of Defendant's Indistinguishable Accounts, Account Number, Account Information and Payment History Errors***

88. Defendant's Disclosure to Plaintiff was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

89. This same template is used virtually every time a consumer requests their file from Defendant through www.annualcreditreport.com.

90. www.annualcreditreport.com is where most consumers obtain their Defendant credit disclosure.

91. Annual Credit Report is managed and operated by the nationwide consumer reporting agencies, including Defendant.

92. The nationwide consumer reporting agencies, including Defendant, collectively formed the entity that owns, operates, and oversees the centralized website through which consumers request and obtain their consumer disclosures, known as Central Source, LLC.

93. Central Source, LLC merely provides the platform through which consumers request their disclosures. It does not determine the content of Defendant's disclosures. Rather, the information included in – or omitted from – those disclosures is dictated by Defendant's own internal policies and procedures.

94. Therefore, consumer disclosures retrieved through annualcreditreport.com all exhibit the same missing full account numbers, account information, and payment history errors.

95. Thus, every consumer with accounts appearing with missing information in their disclosure who requested their disclosure from Defendant through www.annualcreditreport.com since the template's use began received a consumer disclosure with the same errors as Plaintiff.

96. Defendant's error has therefore likely affected thousands of consumers.

97. Defendant has known of the flaws in its systems for years, but has done nothing to fix them, despite the large number of consumers affected.

98. The recurring omissions across accounts furnished by different entities, the standardized presentation of Defendant's Disclosure, Defendant's retention and use of the underlying account information, and Defendant's ability to provide detailed information to paying report users demonstrate that the challenged omissions result from Defendant's chosen disclosure practices. Those practices obstruct the authenticated consumer's review while preserving Defendant's commercial use of the information.

99. Defendant knowingly or recklessly continued those practices despite the statutory command to disclose all information in the consumer's file clearly and accurately and the obvious interference with consumers' ability to identify and evaluate their accounts. Deliberately excluding retained account-identifying information from the authenticated consumer's disclosure creates an unjustifiably high risk of violating that command, substantially greater than the risk associated with a merely careless reading of the statute. Willful noncompliance under § 1681n includes reckless disregard. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007).

100. English v. Trans Union LLC, No. 1:25-cv-00574 (S.D. Ohio Aug. 11, 2026), likewise permitted willfulness allegations concerning a known, automated disclosure practice to proceed and declined, on the pleadings in that case, to resolve Trans Union's asserted privacy justification. Here, the completed authentication process, retention of the omitted information,

repeated programmed omissions, and their concrete effect on Plaintiff supply the factual basis for the knowing-or-reckless noncompliance charged.

101. Defendant's knowing and repeated conduct warrants an award of ***punitive damages.***

102. Defendant's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by Defendant's desire to avoid costs and increase profits.

103. Plaintiff has a right to a full and complete disclosure of the contents of Plaintiff's file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

104. Defendant's failure to accurately, fully, and clearly disclose Plaintiff's information within Defendant's files deprived Plaintiff of that right and impaired Plaintiff's ability to invoke the FCRA's safeguards for the confidentiality and lawful use of Plaintiff's private financial information.

105. Plaintiff has hired the undersigned law firm to represent Plaintiff in this proceeding and has authorized the undersigned counsel to obtain reimbursement for Plaintiff's reasonable fees and costs.

106. Upon information and belief, Defendant's records, internal communications, and witness testimony will further establish that:

a. Data furnisher(s) identified in this First Amended Complaint did report full account number(s), payment history, and other account information;

b. Defendant withheld this information from its consumer disclosure provided to Plaintiff in the form attached as <u>Exhibit A</u>;

c. Other data furnishers whose accounts were included in Defendant's Disclosure similarly provided Defendant with full account numbers of Plaintiff, along with payment history and other account information, which Defendant similarly withheld from the consumer disclosure provided to Plaintiff;

d. Defendant's internal communications and testimony will show that Defendant has been aware for a long time that its consumer disclosures have been defective with respect to other consumers, and has violated the FCRA;

e. Defendant's internal communications and witness testimony will also show that despite its awareness at the highest executive levels, Defendant and its executives have made the deliberate business choice to continue to provide defective consumer disclosures, in violation of the FCRA;

f. Many of these decisions were made for "business reasons" so as to continue to make money from providing Plaintiff's data to third parties, while withholding it from Plaintiff and as a result, preventing Plaintiff from exercising statutory rights.

**Third-Party Inquiries and Dissemination**

107. Defendant's Disclosure records the following third-party inquiries during the 24 months preceding August 1, 2026. The corresponding inquiry pages are included in Exhibit A:

a. TRUIST BANK: 02/25/2026; identified as a hard inquiry on original Disclosure page 11.

b. DRIVE PHILADELPHIA: 12/05/2025; identified as a hard inquiry on original Disclosure page 11.

c. FARMERS GROUP PROPERTY AND CASUALTY INSURANCE COMPANY: 07/09/2026, 04/30/2026, 01/09/2026; identified as a soft inquiry on original Disclosure page 11.

d. CAPITAL ONE NATIONAL ASSOC: 06/30/2026; identified as a soft inquiry on original Disclosure page 13.

108. After all information that should have been included in Defendant's Disclosure is provided in discovery, and to the extent such information is determined to be inaccurate, the transmission of this information by Defendant to these third parties constituted defamation of Plaintiff by Defendant. Specifically, inaccurate negative information harmed Plaintiff's reputation, impairing financial and credit opportunities. Damages for this defamation are deemed to be included in the prayer for relief under applicable count(s) of this First Amended Complaint.

109. Defendant furnished Plaintiff's consumer information to the listed third parties on the dates and for the purposes recorded in Defendant's Disclosure. Those disclosures bear directly on Plaintiff's ability to monitor the use of Plaintiff's private financial information and to determine which parties received information concerning Plaintiff.

**COUNT I**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681g(a)(1)**

110. Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

111. Defendant violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for consumer disclosure by failing to clearly and accurately disclose to Plaintiff, a consumer, all of the information in Plaintiff's file at the time of the request.

112. Specifically, Defendant disclosed the account(s) reported by the data furnisher(s) without full account number(s), account information, and payment history.

113. Additionally, multiple other accounts were reported without full account numbers, even though this information had been reported to Defendant by the applicable data furnishers and was in Defendant's file on Plaintiff.

114. Defendant's violation of 15 U.S.C. § 1681g(a)(1) also infringed Plaintiff's right to privacy and the confidentiality of Plaintiff's personal financial information, which the FCRA expressly protects, 15 U.S.C. § 1681(a)(4), (b), by withholding from Plaintiff – the authenticated consumer – the information Plaintiff needs to identify, monitor, and control the use and dissemination of that information.

115. Defendant knowingly provided inaccurate and incomplete information in Plaintiff's disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years, as well as identified and flagged by regulators.

116. The conduct, action, and inaction of Defendant were willful, rendering Defendant liable to Plaintiff for ***punitive damages*** pursuant to 15 U.S.C. § 1681n.

117. In the alternative, Defendant was negligent, and Plaintiff is entitled to recover damages under 15 U.S.C. § 1681o.

118. Plaintiff is entitled to recover damages, attorneys' fees and costs from Defendant pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE,** Plaintiff requests that judgment be entered in favor of Plaintiff and against Defendant for:

A. Actual damages or statutory damages of not less than $100 and not more than $1,000, as applicable, for willful noncompliance pursuant to 15 U.S.C. § 1681n(a)(1)(A), or actual damages for negligent noncompliance pursuant to 15 U.S.C. § 1681o(a)(1);

B. Punitive damages for willful noncompliance pursuant to 15 U.S.C. § 1681n(a)(2);

C. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and

D. Any other relief the Court may deem just and appropriate.

**COUNT II**
**CONDITIONAL VIOLATION OF THE**
**FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681e(b)**
**(Pled to the Extent Discovery Establishes Duplicate Reporting of the Same Account)**

119. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

120. The inclusion of this Count II on a conditional basis is appropriate because Defendant's violations asserted under Count I – namely, the improper masking and concealment of account numbers in violation of 15 U.S.C. § 1681g – made it impossible for Plaintiff to conclusively determine whether the Indistinguishable Accounts correspond to the same or different accounts. Indeed, it is to avoid this very situation, and to make it easy and not confusing for a consumer to read and understand everything about their credit disclosure, that Congress passed the FCRA in the first place, and mandated a complete disclosure of Defendant's data relating to each account and trade line.

121. These alternative theories are pleaded under Fed. R. Civ. P. 8(d)(2)–(3). Defendant's concealment of the distinguishing account information gives rise to the alternative explanations stated above, and the separate entries and related account facts supply a factual basis for investigating whether Defendant duplicated one obligation or rendered different obligations indistinguishable.

122. At the pleading stage, the detailed historical facts and the reasonable inferences they support must be assessed in Plaintiff's favor. The account entries, Defendant's withholding of distinguishing information, and the resulting effects on Plaintiff raise a reasonable expectation

that discovery of Defendant's account-level records and procedures will establish the facts necessary to resolve those alternatives. See Connelly v. Lane Construction Corp., 809 F.3d 780 (3d Cir. 2016).

123. Upon information and belief, and only to the extent discovery establishes that two or more Indistinguishable Accounts identified above represent the same underlying account, Defendant prepared and/or furnished one or more consumer reports containing materially inaccurate or misleading information by reporting that same account more than once.

124. In that event, Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information concerning Plaintiff about which Defendant reported, in violation of 15 U.S.C. § 1681e(b).

125. The conduct, action, and inaction of Defendant were willful, rendering Defendant liable to Plaintiff for ***punitive damages*** pursuant to 15 U.S.C. § 1681n.

126. In the alternative, Defendant was negligent, and Plaintiff is entitled to recover damages under 15 U.S.C. § 1681o.

127. Plaintiff is entitled to recover damages, attorneys' fees and costs from Defendant pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE,** Plaintiff requests that judgment be entered in favor of Plaintiff and against Defendant for:

A. Actual damages or statutory damages of not less than $100 and not more than $1,000, as applicable, for willful noncompliance pursuant to 15 U.S.C. § 1681n(a)(1)(A), or actual damages for negligent noncompliance pursuant to 15 U.S.C. § 1681o(a)(1);

B. Punitive damages for willful noncompliance pursuant to 15 U.S.C. § 1681n(a)(2);

C. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and

D. Any other relief the Court may deem just and appropriate.

**RELIEF UNDER FEDERAL LAW**

128. Plaintiff seeks the actual or statutory damages, punitive damages, reasonable attorneys' fees, costs, and other relief authorized by the FCRA as set forth in the foregoing Counts, together with prejudgment and postjudgment interest to the extent permitted by law.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable. This demand preserves Plaintiff's objections concerning removal and Plaintiff's positions concerning the original forum election and any purported arbitration or delegation provision.

Dated: October 22, 2026

Respectfully submitted,

/s/ Sophia Zoe Kilmer
Sophia Zoe Kilmer, Esq.
PA Bar No. 312379
Credit Law Office, LLC
1300 Industrial Blvd, Ste 203
Southampton, PA 18966
Tel. 913-645-8690
sophia@creditlawoffice.com
Counsel for Plaintiff

# EXHIBIT A

## REDACTED CONSUMER DISCLOSURE

### (OMITTED FROM PUBLIC FILING; PROVIDED IN UNREDACTED FORM TO DEFENDANT'S COUNSEL)

# <u>EXHIBIT B</u>

# FTC OPINION LETTER

FEDERAL TRADE COMMISSION
PROTECTING AMERICA'S CONSUMERS

# Advisory Opinion to Darcy (06-30-00)

June 30, 2000

Denise A. Darcy, Esq.

Asst. General Counsel

TRANS UNION

555 West Adams Street

Chicago, Illinois 60661

Dear Ms. Darcy:

This responds to your letter dated concerning whether the Fair Credit Reporting Act ("FCRA") allows Trans Union or another consumer reporting agency ("CRA"), for security purposes, to "truncate, scramble or mask the account number and social security number" when making file disclosures to consumers. You report that such a procedure has been recommended to you by a consumer who was recently the victim of account takeover fraud by a perpetrator who fraudulently procured the individual's Trans Union file by impersonating the consumer. You state: "While some creditors truncate or scramble the data before they supply it to us, not all do; therefore, many of the account numbers on our file are complete and accurate, and that is what we disclose to the consumer."

Section 609(a)(1) of the FCRA states that CRAs, including major credit bureaus such as Trans Union, "shall, upon request (by a consumer), clearly and accurately disclose to the consumer . . . *All information* in the consumer's file at the time of the request" (emphasis added). If the "information in the consumer's file at the time of the request" includes account and social security numbers, the provision thus normally requires that the CRA "clearly and accurately" include such items in its disclosure to consumers. However, because the trigger for a file disclosure is a "request" by a consumer, a CRA may allow consumers (such as the individual in your letter) to choose truncation or other security measures in their own file disclosure. In other words, although Section 609 provides consumers with a right to *all information* in the file, a CRA may provide a method for the consumer to ask for less than all information and then comply with that "request" when it makes the disclosure.

In sum, it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide "accurate" (and perhaps not "clear") disclosure of "all information" in the file. However, if a consumer's "request" for a file disclosure is framed so as to allow some items in the file to be abbreviated or revised in that fashion, a CRA making such a disclosure would comply with Section 609.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

# EXHIBIT C

## CREDIT REPORTING RESOURCE GUIDE

## ACCOUNT IDENTIFIERS AND DUPLICATE

## TRADELINES

## PRINTED PAGES 3-3, 4-5 AND 6-14

# Programming Standards

## Character Vs. Packed Format

The Consumer Data Record consists of the Base Segment and additional segments that may be appended, as appropriate. The Header Record, Base Segment and Trailer Record are available in both unpacked and packed formats. All appendages are unpacked.

Each submission of data should contain only one occurrence of each account number.

Two formats are available: character and packed. The only differences between these two formats are some of the field positions, caused by differences in recording techniques.

**Character Format (preferred)**

| | |
|---|---|
| Record Size | 426 alphanumeric characters (or bytes) |
| Format | Fixed or variable blocked |

**Packed Format**

| | |
|---|---|
| Record Size | 366 bytes, packed and unpacked data |
| Format | Variable blocked |

**Record Layout**

426 or 366 Base Segment followed by Appendages in alphabetic sequence. For example:
Base + J1 + J2 + L1

**Electronic Transmission**

| | |
|---|---|
| File Name | No spaces or special characters can be included in the File Name. |

**Notes:**

The Character Format is preferred.

Refer to Exhibit 16 for Examples of Record Layouts – Hexadecimal Representation.


*Copyright 2022 © Consumer Data Industry Association*

Return to Table of Contents

# Field Definitions

## Base Segment

| FIELD | FIELD NAME & DESCRIPTION | 426 Character Format | | |
|---|---|---|---|---|
| | | Length | Position | Recording Technique |
| 3 | **Time Stamp**<br>Contains date and time of actual account information update.<br><br>Format for packed date is 0MMDDYYYYHHMMSSs — where s is the sign. Format is MMDDYYYYHHMMSS for character date. | 14 | 6-19 | N |
| 4 | **Reserved**<br>Zero fill.<br><br>Field formerly used for Correction Indicator. | 1 | 20 | N |
| 5 | **Identification Number**<br>Used to uniquely identify a data furnisher. Report your internal code to identify each branch, office, and/or credit central where information is verified. For accounts reported by servicers, the Identification Number should refer to the current holder of the note.<br><br>This number must be unique, at least 5 digits long, and should not include embedded blanks or special characters. Entire field should *never* be zero, blank or 9 filled.<br><br>**This field must be consistent on a month-to-month basis to avoid duplication of information. Notify consumer reporting agencies before adding, deleting, or changing the identifiers in this field.** | 20 | 21-40 | AN |
| 6 | **Cycle Identifier**<br>Report the internal cycle code for this account. Field is required if reporting by cycles; otherwise blank fill. | 2 | 41-42 | AN |
| 7 | **Consumer Account Number**<br>Report the individual's complete and unique account number as extracted from your file. Do not include embedded blanks or special characters.<br><br>**Do not report the Social Security Number, in whole or in part, within the Consumer Account Number.**<br><br>Account number scrambling and encryption methods for security purposes are permitted. Contact the consumer reporting agencies for information regarding the Metro 2® scrambling techniques. | 30 | 43-72 | AN |


*Copyright 2022 © Consumer Data Industry Association*
Return to Table of Contents

# Frequently Asked Questions and Answers

**20. Question: How should a business account be reported when a consumer is personally liable?**

Answer:

- Report the consumer's information in the Base Segment with ECOA Code **2** (Joint/Contractual Liability) or **5** (Co-maker or Guarantor) in Field 37, as applicable.
- Report the business name in the J2 Segment starting in the Surname field (Field 3). The business name may continue into the First and Middle Name fields if needed.
- Report ECOA Code **W** (Business/Commercial) in Field 10 of the J2 Segment.

**Note:** The business name will not be added to the consumer credit databases.

## DUPLICATE TRADELINES

**21. Question: What causes duplicate tradelines?**

Answer: Any change in Account Number, Identification Number, Portfolio Type and/or Date Opened may cause duplication if the consumer reporting agencies are not notified prior to the change.


*Copyright 2022 © Consumer Data Industry Association*

Return to Table of Contents